## PETTIT v. WALSHE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 563. Argued April 6, 1904.—Decided May 2, 1904.

Where the petition for a writ of *habeas corpus*, and the warrant under which the accused is arrested both refer to a treaty and the determination of the court below depends at least in part on the meaning of certain provisions of that treaty, the construction of the treaty is drawn in question, and this court has jurisdiction of a direct appeal from the Circuit Court, even though it is also necessary to construe the acts of Congress passed to carry the treaty provisions into effect.

Where an extradition treaty provides that the surrender shall only be made "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had there been committed," one whose surrender is demanded from this Government and who is arrested in one of the States cannot be delivered up except upon such evidence of criminality as under the laws of that State would justify his apprehension and commitment for trial if the crime had there been committed.

A United States commissioner appointed to execute the extradition laws has no power to issue a warrant on a requisition made under existing treaties with Great Britain, under which a marshal of a district in another State can arrest the accused and deliver him in another State before the commissioner issuing the warrant, without a previous examination being had before some judge or magistrate authorized by the acts of Congress to act in extradition matters, and sitting in the State where he is found and arrested.

THE facts are stated in the opinion of the court.

*Mr. Charles Fox* for H. B. M., Consul General at New York, appellant:

Upon this appeal, from a decision upon the application for a writ of *habeas corpus*, this court has the power to review the decision below, upon the facts, as well as the law. *In re Neagle*, 135 U. S. 142; *Horner* v. *United States*, 143 U. S. 570. An order of a district or circuit court of the United States, upon an application for a writ of *habeas corpus*, can be reviewed only by an appeal, and not by a writ of error. *Rice* v. *Ames*, 180 U. S. 371; *Re Morrissey*, 137 U. S. 157, 158. The

appeal lies directly to this court, as the construction of a treaty is drawn in question. *Rice* v. *Ames, supra.*

The warrant of the Commissioner in New York could legally be executed in Indianapolis, by the marshal for that district, and the appellee brought by the marshal, before the Commissioner in New York for a hearing. Act of August 12, 1848, 9 Stat. 302; § 5270, Rev. Stat.; *Grin* v. *Shine,* 187 U. S. 194; *The British Prisoners,* 1 Wood. & M. 66; *In re Henrich,* 5 Blatch. 415; *Re Fergus,* 30 Fed. Rep. 607; *Ex parte Van Hoven,* 4 Dill. 415.

The state department, in issuing mandates, where required under treaties of extradition, does not issue them to a judge or commissioner, in any particular State or district, but directs them to any justice of the Supreme Court, circuit judge, district judge, etc., as contained in section 5270, Rev. Stat. See various forms, in Moore on Extradition, pp. 362, 364, 365, and § 304 as to warrants running throughout the United States. After the *Exposito* case in 1882 an effort was made to amend the act so that a person arrested as a fugitive could not be arrested in one State and brought to another for hearing but Congress did not amend the act in this respect although it did amend it in other respects. Sen. Rep. No. 82, 47th Cong. 2d Sess. Act of August 3, 1882, 22 Stat. 215.

The Federal law regulates proceedings for extradition, and state laws have no application thereto, except as necessary to define the crime, and determine whether the evidence introduced in support of extradition would be sufficient to justify his commitment for trial, if the offense had been committed within the State in which he is found. *Rice* v. *Ames,* 180 U. S. 371; *Wright* v. *Henkel,* 190 U. S. 40.

In the case of a fugitive convict, such as the appellee, the state law has no application, other than to ascertain whether the crime of which the appellee has been convicted was a crime within the laws of Indiana, and this could be determined with equal protection to all rights of the appellee, as well in New York as in Indiana.

The appellee is not a fugitive who is simply charged with crime but one who has been convicted of the crime; the procedure therefore in this case is not regulated by Article X of the treaty of 1842, but by Article VII of the treaty of 1889, which, dealing specially with persons convicted of crimes, respective'y named and specified in the said Article X, whose sentence therefor shall not have been executed, prescribes the evidence upon which a fugitive shall be surrendered.

Whatever might be said in support of the decision of the Circuit Court, in respect to a person who had not been convicted of crime, and who was entitled to a hearing, and to have the evidence of criminality determined by the law of the place where he was found, can have no force in the case of a fugitive convict, under the treaty; for the treaty of 1889 has, in respect to fugitive convicts, avoided the requirements of evidence of criminality contained in the treaty of 1842.

If there is any conflict or inconsistency between Article X of the treaty of 1842, and Article VII of the treaty of 1889, the latter will control; being, in effect, a later law, it supersedes the earlier treaty. *Head Money Cases,* 112 U. S. 580; *Whitney* v. *Robertson,* 124 U. S. 190; *Horner* v. *United States,* 143 U. S. 570; *Chinese Exclusion Cases,* 130 U. S. 581. Treaties for extradition are to be liberally construed, for the purpose of carrying their object into effect. *Grin* v. *Shine,* 187 U. S. 191; *Tucker* v. *Alexandroff,* 183 U. S. 424.

An alien convict has no right of asylum or habitation anywhere in the United States under our immigration laws, and can acquire no local residence. *Grin* v. *Shine, supra.*

That the question of the extradition of the appellee is no longer open, by reason of the decision of Commissioner Moores, is not supported by the authorities. *In re Kelly,* 26 Fed. Rep. 852.

If the Commissioner had held that the offense was nonpolitical, then, if his decision is to be considered final, there could be no appeal to the Secretary of State on behalf of the fugitive. It is a general principle that the surrender of a

fugitive criminal is an act of government to be performed by the executive authority. Moore on Extradition, vol. 1, §§ 210, 359; *In re Kaine*, 3 Blatch. 8.

. . As under the extradition procedure of the United States, there is no opportunity for review where the fugitive is discharged, the only remedy a demanding government has, is to have the fugitive arrested on a new complaint. *Re Calder*, 6 Op. Att'y Gen'l, 91; *Re Muller*, 10 Op. Att'y Gen'l, 501; *S. C.*, 5 Phila. Rep. 289.

*Mr. Ferdinand Winter*, with whom *Mr. Addison C. Harris* was on the brief, for appellee:

On every writ of error and appeal the first and fundamental question is that of jurisdiction, and the court, of its own motion, will refuse to proceed where want of jurisdiction appears on the face of the record. *Continental National Bank* v. *Buford*, 191 U. S. 119.

The jurisdiction in this case depends upon whether the construction of a treaty is involved. Act, March 31, 1891, § 5; 1 U. S. Comp. Stats. 1901, ch. 8*a*; *Cross* v. *Burke*, 146 U. S. 82; *Ex parte Lennon*, 150 U. S. 393; *Craemer* v. *State*, 168 U. S. 124.

This case depends for its decision upon the construction of the statutes relating to fugitives from the justice of a foreign country, and regulating the appointment and defining the powers of United States commissioners. It does not involve the construction of any treaty. § 5270, 3 U. S. Comp. Stats., 1901; § 19, Act, May 28, 1896; § 621, 1 U. S. Comp. Stats. 1901; § 1014, 1 Comp. Stats. U. S. 1901; § 1, Act, August 18, 1894; 1 Comp. Stats. U. S. p. 717.

There was no exception to the ruling and judgment of the court below, but, on the contrary, the British government acquiesced in the judgment by procuring appellee to be again arrested and tried upon the same charge, before a commissioner for the District of Indiana, in accordance with the judgment of the court below in this case. This was a waiver of error in said judgment, and of the right to appeal therefrom. *Liebuch*

v. *Stahle,* 66 Iowa, 749; *Gordon* v. *Ellison,* 9 Iowa, 317; *Carr* v. *Casey,* 20 Illinois, 637; *Holland* v. *Commercial Bank,* 22 Nebraska, 585; *Wilson* v. *Roberts,* 38 Nebraska, 206; *Brooks* v. *Hunt,* 17 Johns. 484; *Ehrman* v. *Astoria,* 26 Oregon, 377; *McAfee* v. *Kirk,* 78 Georgia, 356.

Immediately upon the appellee being discharged from arrest under the warrant of the New York Commissioner Shields, the British government, upon whose complaint that warrant had been issued, procured the appellee to be rearrested upon the same charge, upon a warrant issued by a judge, and brought before a commissioner of the District of Indiana, pursuant to the command of the warrant, by whose judgment, still in full force, appellee was acquitted and discharged upon the merits, after a full hearing. This judgment, while in force, is final, and disposed of the subject matter. The court cannot afford any substantial relief in the present case, which presents simply a moot question. *Tennessee* v. *Condon,* 189 U. S. 70, 71; *Mills* v. *Green,* 159 U. S. 653; *California* v. *Railroad,* 149 U. S. 314; *Dakota* v. *Glidden,* 113 U. S. 225; *Dinsmore* v. *Express Co.,* 183 U. S. 120; *Codlin* v. *Kohlhausen,* 181 U. S. 151; *Kimball* v. *Kimball,* 174 U. S. 159; *New Orleans Flour Inspectors,* 160 U. S. 170; *Washington &c.* v. *Columbia,* 137 U. S. 62; *Little* v. *Bowers,* 134 U. S. 547; *San Mateo County* v. *Southern Pac. R. Co.,* 116 U. S. 138; *Coryell* v. *Holcombe,* 9 N. J. Eq. 650; *In re Treadwell,* 111 California, 189.

The hearing of an application for the extradition of a fugitive from the justice of a foreign government, arrested upon the warrant of a United States commissioner, must be had in the district in which the alleged fugitive is found and arrested. § 19, Act, May 28, 1896; § 1, Act, August 18, 1894, 28 Stat. 416; § 5270, Rev. Stat.; *Rice* v. *Ames,* 180 U. S. 374.

The defendant has a right to be examined as a witness in his own behalf, if he is a competent witness by the laws of the State in which he is found. *In re Farez,* 7 Blatch. 345; *S. C.,* Fed. Cas. No. 4645.

And to examine witnesses in his own behalf. *In re Kelley,*

25 Fed. Rep. 268. The competency of evidence is to be determined by the law of the State in which the hearing is had. *In re Charleston,* 34 Fed. Rep. 531.

If there were conflict between the treaty and the statutes, the latter, being later in enactment, would control. *Horner* v. *United States,* 143 U. S. 570; *Head Money Case,* 112 U. S. 580; *Whitney* v. *Robertson,* 124 U. S. 190; *Chinese Exclusion Case,* 130 U. S. 581.

In this case there is no conflict. The treaty itself has reference to and recognizes the territorial and governmental subdivisions of the United States.

The evidence of criminality must be such as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had there been committed. Under Art. X, Treaty of 1842, 8 Stat. 572, 576, if the acts alleged to have been committed are not criminal by the statutes of the United States, resort must be had to the laws of the State. *Wright* v. *Henkel,* 190 U. S. 40; § 1014, Comp. Stats. U. S. 1901; *In re Farez,* 7 Blatch. 345; *S. C.,* Fed. Cas. No. 4645.

The construction contended for by appellant involves the establishment of the power to arrest a presumably innocent man at his place of residence, and to remove him therefrom without any hearing as to the rightfulness of his arrest, to the most distant part of the country. He may be taken from New York to Alaska, or from Australia to London.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is a case of extradition. It presents the question whether a Commissioner specially appointed by a court of the United States under and in execution of statutes enacted to give effect to treaty stipulations for the apprehension and delivery of offenders, can issue a warrant for the arrest of an alleged criminal which may be executed by a marshal of the United States, within his District, in a State other than the one in which the Commissioner has his office. It also presents

the question whether a person, arrested under such a warrant, can be lawfully taken beyond the State, in which he was found, and delivered in another State before the officer who issued the warrant of arrest, without any preliminary examination in the former State as to the criminality of the charge against him.

By the tenth article of the treaty between the United States and Great Britain, concluded August 9, 1842, it was provided that upon mutual requisitions by them, or their ministers, officers, or authorities, respectively made, they shall "deliver up to justice all persons who, being charged with the crime of murder, or assault with intent to commit murder, or piracy, or arson, or robbery, or forgery, or the utterance of forged paper, committed within the jurisdiction of either, shall seek an asylum, or shall be found, within the territories of the other." But by the same article it was provided that "this shall only be done upon such evidence of criminality as, *according to the laws of the place where the fugitive or person so charged shall be found*, would justify his apprehension and commitment for trial, if the crime or offense had *there* been committed: and the respective judges and other magistrates of the two Governments shall have power, jurisdiction, and authority, upon complaint made under oath, to issue a warrant for the apprehension of the fugitive or person so charged, that he may be brought before such judges or other magistrates, respectively, to the end that the evidence of criminality may be heard and considered; and if, on such hearing, the evidence be deemed sufficient to sustain the charge, it shall be the duty of the examining judge or magistrate to certify the same to the proper executive authority, that a warrant may issue for the surrender of such fugitive. The expense of such apprehension and delivery shall be borne and defrayed by the party who makes the requisition, and receives the fugitive." 8 Stat. 572, 576.

A supplementary treaty between the same countries, concluded July 12, 1889, provided for the extradition for certain crimes not specified in the tenth article of the treaty of 1842,

and "punishable by the laws of both countries"; and, also, declared that the provisions of the above article "shall apply to persons convicted of the crimes therein respectively named and specified, whose sentence therefor shall not have been executed. In case of a fugitive criminal alleged to have been convicted of the crime for which his surrender is asked, a copy of the record of the conviction, and of the sentence of the court before which such conviction took place, duly authenticated, shall be produced, together with the evidence proving that the prisoner is the person to whom such sentence refers." 26 Stat. 1508, 1510.

By an act of Congress, approved August 12, 1848, c. 167, and entitled "An act for giving effect to certain treaty stipulations between this and foreign governments for the apprehension and delivering up of certain offenders," it is provided (§ 1): "That in all cases in which there now exists, or hereafter may exist, any treaty or convention for extradition between the Government of the United States and any foreign government, it shall and may be lawful for any of the justices of the Supreme Court or judges of the several District Courts of the United States—and the judges of the several state courts, and the commissioners *authorized so to do* by any of the courts of the United States, are hereby severally vested with power, jurisdiction, and authority, upon complaint made under oath or affirmation, charging any person found within the limits of any State, district, or territory, with having committed within the jurisdiction of any such foreign government any of the crimes enumerated or provided for by any such treaty or convention—to issue his warrant for the apprehension of the person so charged, that he may be brought before such judge or commissioner, to the end that the evidence of criminality may be heard and considered; and if, on such hearing, the evidence be deemed sufficient by him to sustain the charge under the provisions of the proper treaty or convention, it shall be his duty to certify the same, together with a copy of all the testimony taken before him, to the Secretary of State,

that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of said treaty or convention; and it shall be the duty of the said judge or commissioner to issue his warrant for the commitment of the person so charged to the proper gaol, there to remain until such surrender shall be made." "SEC. 6. . . . That it shall be lawful for the courts of the United States, or any of them, *to authorize any person or persons to act as a Commissioner or Commissioners*, under the provisions of this act; and the doings of such person or persons so authorized, in pursuance of any of the provisions aforesaid, shall be good and available to all intents and purposes whatever." 9 Stat. 302.

And by section 5270 of the Revised Statutes—omitting therefrom the proviso added thereto by the act of June 6, 1900, c. 793, 31 Stat. 656, which applies only to crimes committed in a foreign country or territory "occupied by or under the control of the United States"—it is provided: "Whenever there is a treaty or convention for extradition between the Government of the United States and any foreign government, any justice of the Supreme Court, circuit judge, district judge, commissioner, *authorized so to do by any of the courts of the United States*, or judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within the limits of any State, District, or Territory, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the

proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made." See also § 5273.

In the Sundry Civil Appropriation Act of August 18, 1894, will be found the following clause: "*Provided*, That it shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense, to take the defendant before the nearest Circuit Court commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial, and the officer or magistrate issuing the warrant shall attach thereto a certified copy of the complaint, and upon the arrest of the accused, the return of the warrant, with a copy of the complaint attached, shall confer jurisdiction upon such officer as fully as if the complaint had originally been made before him, and no mileage shall be allowed any officer violating the provisions hereof." 28 Stat. 372, 416.

Under these treaty and statutory provisions, complaint on oath was made before John A. Shields—a Commissioner appointed by the District Court of the United States for the Southern District of New York *to execute the above act of August 12, 1848, and the several acts amendatory thereof*—that one James Lynchehaun was convicted, in a court of Great Britain, of the crime of having feloniously and unlawfully wounded one Agnes McDonnell, with intent thereby, feloniously and with malice aforethought, to kill and murder said McDonnell; that the accused was sentenced to be kept in penal servitude for his natural-life; that in execution of such sentence he was committed to a convict prison in Queens County, Ireland, and escaped therefrom, and was at large; and that he was a fugitive from the justice of the Kingdom of Great Britain and Ireland, and within the territory of the United States. It is admitted that the present appellee is the person referred to in the warrant as James Lynchehaun.

Upon the complaint, Commissioner Shields, in his capacity as a Commissioner appointed by a court of the United States to execute the laws relating to the extradition of fugitives from the justice of foreign countries, issued on the sixth day of June, 1903, in the name of the President, a warrant addressed "to any marshal of the United States, to the deputies of any such marshal, or any or either of them," commanding that the accused be forthwith taken and brought before him, *at his office, in the city of New York,* in order that the evidence as to his criminality be heard and considered, and if deemed sufficient to sustain the charge, that the same might be certified, together with a copy of all the proceedings, to the Secretary of State, in order that a warrant might be issued for the surrender of the accused pursuant to the above treaty.

This warrant having been placed for execution in the hands of the appellant, as Marshal of the United States for the District of Indiana, he arrested the accused in that State. Thereupon the latter filed his application for a writ of *habeas corpus* in the Circuit Court of the United States for that District, alleging that his detention was in violation of the Constitution, treaties and laws of the United States. The writ was issued, and the Marshal justified his action under the warrant issued by Commissioner Shields. Referring to the warrant and averring its due service upon the accused, the Marshal's return stated that the warrant was "regular, legal, valid and sufficient in law in all respects to legally justify and warrant the arrest and detention of petitioner, and, under the laws of the United States, it was and is the duty of this defendant to arrest and detain said petitioner, *and deliver him as commanded by said writ for hearing before Commissioner Shields, in New York city;* that said writ runs for service in the State of Indiana, although issued by a commissioner of the United States for the Southern District of New York, by reason of its being a writ in extradition; that defendant is informed and believes, and therefore states the fact to be, that petitioner is the identical person commanded to be arrested by said warrant as James

Lynchehaun;   . . .   and that it is by virtue and authority solely of said warrant that defendant holds and detains petitioner; that defendant purposes, if not otherwise ordered by this honorable court, to obey, as United States marshal for the District of Indiana, the command of said warrant as set out therein, believing it to be his duty as said officer so to do."

The accused excepted to the Marshal's return for insufficiency in law, and the case was heard upon that exception. The court held the return to be insufficient; and the Marshal having indicated his purpose not to amend it, the accused was discharged upon the ground that the Commissioner in New York was without power to issue a warrant under which the Marshal for the District of Indiana could legally arrest the accused and deliver him before the court of that Commissioner in New York without a previous examination, before some proper officer in the State where he was found. *In re Walshe*, 125 Fed. Rep. 572.

The appellee contends that this case only involves a construction of certain acts of Congress; and that, therefore, this court is without jurisdiction to review the judgment on direct appeal from the Circuit Court. *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, 407. We do not concur in this view. The treaties of 1842 and 1889 are at the basis of this litigation, and no effective decision can be made of the controlling questions arising upon the appeal, without an examination of those treaties and a determination of the meaning and scope of some of their provisions. A case may be brought directly from a Circuit Court to this court if the *construction* of a treaty is therein drawn in question. 26 Stat. 826, c. 517, § 5. The petition for the writ of *habeas corpus* and the warrant under which the accused was arrested both refer to the treaty of 1842, and the court below properly, we think, proceeded on the ground that the determination of the questions involved in the case depended in part, at least, on the meaning of certain provisions of that treaty. The construction of the treaties was none the less drawn in question because it became necessary

or appropriate for the court below also to construe the acts of Congress passed to carry their provisions into effect.

We now go to the merits of the case. It has been seen that the treaty of 1842 expressly provides, among other things, that a person charged with the crime of murder, committed within the jurisdiction of either country, and found within the territories of the other, shall be delivered up by the latter country; and that the provision shall apply in the case of one convicted of such a crime, but whose sentence has not been executed. But both countries stipulated in the treaty of 1842 that the alleged criminal shall be arrested and delivered up *only* upon such evidence of criminality as, according to the laws of the *place* where the fugitive person so charged *is found*, would justify his apprehension and commitment for trial, if the crime or offense had been there committed. As applied to the present case, that stipulation means that the accused, Walshe, could not be extradited under the treaties in question, except upon such evidence of criminality as, under the laws of the State of Indiana—the place in which he was found—would justify his apprehension and commitment for trial if the crime alleged had been there committed. The words in the tenth article of the treaty of 1842, "as according to the laws of the place where the fugitive or person charged shall be found, would justify his apprehension and commitment for trial, if the crime or offence had there been committed," and the words "punishable by the laws of both countries," in the treaty of 1889, standing alone, might be construed as referring to this country as a unit, as it exists under the Constitution of the United States. But as there are no common law crimes of the United States, and as the crime of murder, as such, is not known to the National Government, except in places over which it may exercise exclusive jurisdiction, the better construction of the treaty is, that the required evidence as to the criminality of the charge against the accused must be such as would authorize his apprehension and commitment for trial in that State of the Union in which he is arrested.

It·was substantially so held in *Wright* v. *Henkel*, 190 U. S.
40, 58, 61, which was a case of extradition under the same
treaties as those here involved. In that case the alleged
fugitive criminal from the justice of Great Britain was found
in New York. The court said: "As the State of New York
was the place where the accused was found and, in legal effect,
the asylum to which he had fled, is the language of the treaty,
'made criminal by the laws of both countries,' to be interpreted
as limiting its scope to acts of Congress and eliminating the
operation of the laws of the States? That view would largely
defeat the object of our extradition treaties by ignoring the
fact that for nearly all crimes and misdemeanors the laws of
the States, and not the enactments of Congress, must be looked
to for the definition of the offense. There are no common law
crimes of the United States, and, indeed, in most of the States
the criminal law has been recast in statutes, the common law
being resorted to in aid of definition. *Benson* v. *McMahon,*
127 U. S. 457." Again: "When by the law of Great Britain,
and by the law of the State in which the fugitive is found, the
fraudulent acts charged to have been committed are made
criminal, the case comes fairly within the treaty, which other-
wise would manifestly be inadequate to accomplish its pur-
poses. And we cannot doubt that if the United States were
seeking to have a person indicted for this same offence under
the laws of New York extradited from Great Britain, the·
tribunals of Great Britain would not decline to find the offence
charged to be within the treaty because the law violated was a
statute of one of the States and not an act of Congress."

The above provision in the treaty of 1842 has not been modi-
fied or superseded by any of the acts passed by Congress to
carry its provisions into effect. In our opinion, the evidence
of the criminality of the charge must be heard and considered
by some judge or magistrate, authorized by the acts of Con-
gress to act in extradition matters, and sitting in the State
where the accused was found and arrested. Under any other
interpretation of the statute Commissioner Shields, proceeding

under the treaty, could by his warrant cause a person charged with one of the extraditable crimes and found in one of the Pacific States, to be brought before him at his office in the city of New York, in order that he might hear and consider the evidence of the criminality of the accused. But as such a harsh construction is not demanded by the words of the treaties or of the statutes, we shall not assume that any such result was contemplated by Congress. While the view just stated has some support in those parts of the act of 1848, and section 5270 of the Revised Statutes which provide for the accused being brought before the justice, judge or commissioner who issued the warrant of arrest, it is not consistent with the above proviso in the Sundry Civil Act of August 18, 1894, the language of which is broad enough to embrace the case of the arrest by a marshal, within the district for which he was appointed, of a person charged with an extraditable crime committed in the territories of Great Britain and found in this country. By that proviso it is made the duty of a marshal arresting a person charged with any crime or offense to take him before the nearest Circuit Court Commissioner or the nearest judicial officer, having jurisdiction for a hearing, commitment or taking bail for trial in cases of extradition. The commissioner or judicial officer here referred to is necessarily one acting as such within the State in which the accused was arrested and found. So that, assuming that it was competent for the Marshal for the District of Indiana to execute Commissioner Shields' warrant within his District, as we think it was, his duty was to take the accused before the nearest magistrate in that District, who was authorized by the treaties and by the above acts of Congress to hear and consider the evidence of criminality. If such magistrate found that the evidence sustained the charge, then, under section 5270 of the Revised Statutes, it would be his duty to issue his warrant for the commitment of the accused to the proper jail, there to remain until he was surrendered under the direction of the National Government, in accordance with the treaty. Instead of pursuing that course, the Marshal

arrested Walshe, and in his return to the writ of *habeas corpus* distinctly avowed his purpose, unless restrained by the court, to take the prisoner at once from the State in which he was found and deliver him in New York, before Commissioner Shields, without a hearing first had in the State of Indiana before some authorized officer or magistrate there sitting, as to the evidence of the criminality of the accused. The Circuit Court adjudged that the Marshal had no authority to hold the accused in custody for any such purpose; and, the Marshal declining to amend his return and not avowing his intention to take him before a judicial officer or magistrate in Indiana for purposes of hearing the evidence of criminality, the prisoner was properly discharged from the custody of that officer.

For the reasons above stated the judgment is

*Affirmed.*