Samuel SHAPIRO, Petitioner,

v.

Thomas E. FERRANDINA, United States Marshal for the Southern District of New York, Respondent.

Civ. No. 203.

United States District Court, S. D. New York.

Jan. 31, 1973.

---

Nathan Lewin, William Jeffress, Jr., Miller, Cassidy, Larroca & Lewin, Washington, D. C., for petitioner; Leon Wildes, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, by Michael B. Mukasey, Asst. U. S. Atty., for respondent.

GURFEIN, District Judge.

In extradition proceedings brought by the Government of Israel the petitioner has been found by a District Judge of this Court, Judge Milton Pollack, sitting as a committing Judge under the provisions of 18 U.S.C. § 3184, to be extraditable to Israel in accordance with the Convention on Extradition between the Governments of the United States of America and the State of Israel, 14 U. S.T. 1708–14, T.I.A.S. No. 5476 December 10, 1962. Judge Pollack wrote a lucid and comprehensive opinion on the matter. In re Shapiro, 352 F.Supp. 641 (S.D.N.Y.1973).

The petitioner now brings a petition for a writ of habeas corpus for his discharge from custody.

 While it is unusual for one District Judge to be required to review the action of another District Judge, there is no escape from the necessity to do so in extradition proceedings, in a case where the District Judge acted under 18 U.S.C. § 3184 as a committing magistrate. Since there is no direct appeal from the order of the committing Judge, Jiminez v. Aristeguieta, 290 F.2d 106 (5 Cir. 1961), the only review available is by habeas corpus, and the Judge from whom such relief is to be sought is a Judge of coordinate jurisdiction who sits as a reviewing court under familiar principles.

 These principles of review require that the habeas corpus proceeding should not be a rehearing. "Habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925). The entire record in the extradition proceeding is now in evidence here. The petitioner raises contentions with respect to each category of permissible review.

Before considering these matters the status of the petitioner at this stage of the extradition should be reviewed.

A warrant of arrest was issued by Judge Motley of the Southern District of New York. The Marshal for this District apprehended the petitioner in Brooklyn at his residence in the Eastern District of New York. The petitioner was brought to the Southern District. He was already on bail in an immigration proceeding in the amount of $30,000. Judge Pollack, sitting in the Miscellaneous Part in the absence of Judge Motley, fixed additional bail in the amount of $25,000 and released the petitioner pending a hearing which he later conducted himself. After Judge Pollack had rendered his opinion he ordered the petitioner remanded to the custody of the Marshal but stayed the order for ten days.

When the habeas corpus matter came on before me the petitioner was still at liberty under bond.

I

The threshold question is whether a District Court can entertain a petition for habeas corpus in extradition when the petitioner is not in actual confinement. I raised the question *sua sponte* but the Government does not press the point. The petitioner urges strongly that it is no longer necessary for him to surrender in order to go free. And although the habeas corpus statute, 28 U.S.C. § 2241 still speaks of "a prisoner" who is "in custody" the meaning has been liberalized to the exclusion of literalism. The Supreme Court in Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) held that a prisoner on parole was "in custody". In the language of Mr. Justice Black, "It [the Great Writ] is not now and never has been a static, narrow formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." And it was logical, then, for the Court of Appeals for the Fifth Circuit to say that an applicant free on bond also satisfies the "in custody" requirement. Marden v. Purdy, 409 F.2d 784, 785 (5 Cir. 1969). See also United States ex rel. Smith v. Di Bella, 314 F. Supp. 446 (D.Conn.1970); Duncombe v. State of New York, 267 F.Supp. 103, 109 (S.D.N.Y.1967). So too, a detainer lodged in a jail for future transfer of the prisoner to the detaining authority constitutes sufficient "custody" to make habeas corpus available. United States ex rel. Meadows v. State of New York, 426 F.2d 1176, 1179 (2 Cir. 1970).

■ There is no reason why the modern liberal trend should not apply in international extradition, particularly since habeas corpus is the only remedy available. That, indeed, may have been the pragmatic sanction for the courts which have considered petitions for habeas corpus in international extradition where the petitioner was on bail at the time of the habeas corpus hearing. See, e. g. Jiminez v. Aristeguieta, 314 F.2d 649 (5 Cir. 1963); United States ex rel. Eatessami v. Marasco, 275 F.Supp. 492 (S.D.N.Y.1967). I conclude that the remedy of the writ is available to the petitioner without a symbolic entry into a cell.

## II

### JURISDICTION

By a strange quirk of circumstance the discussion above gives focus to the attack on the jurisdiction of the Southern District of New York, as will appear. The petitioner contends that the only federal district court which has jurisdiction over this extradition proceeding under 18 U.S.C. § 3184 is the Eastern District of New York.

The petitioner was arrested at his home in Brooklyn, New York which is in the Eastern District. He was taken to the Federal Detention Center in the Southern District pursuant to the warrant of arrest issued in the Southern District. The complaint by the Assistant United States Attorney of the Southern District recited *inter alia* "that the said Samuel Shapiro has sought asylum within the jurisdiction of the United States and may be found in the State of New York and the City of New York, in the Borough of Brooklyn, at 5612–12th Avenue." The petitioner moved in timely manner to dismiss the complaint upon the ground that there was no jurisdiction in the Southern District but that sole jurisdiction lay in the Eastern District.

He argues that (1) the term "found" as used in 18 U.S.C. § 3184 limits jurisdiction over international extradition proceedings to the federal district where a fugitive is actually apprehended; (2) the complaint failed to allege that the petitioner was in the Southern District, and since the complaint was jurisdictionally deficient facts discovered at the bail hearing could not cure the deficiency; and (3) in any event, upon his arrest in Brooklyn the petitioner should have been brought to the Eastern District for further proceedings upon the warrant.

■ There is no compelling precedent that requires the word "found" to be limited only to "apprehended" or "arrested" as the petitioner contends. While it is true that a fugitive arrested in a particular district is "found" in that district there is no reason why he cannot also be "found" in a district with which his contacts are particularly strong.

■ As a matter of fact the Judge who signs the warrant of arrest which starts the extradition proceeding does not know where the fugitive will actually be found. It can hardly be fatal to a treaty arrangement between two high contracting parties that it turns out that the fugitive is actually found in a district other than the district from which the warrant issued.

Nor is there any sensible argument of due process that requires the description of the fugitive's residence to be exact. Often fugitives, by their very character as fugitives, shift from place to place.

Assuming then that the address in Brooklyn was unnecessary to the validity of the warrant, and was to that extent surplusage, the next question is whether the petitioner can be said to have been "found" in the Southern District. As we have seen, the warrant will often precede the actual "finding" of the fugitive. If that is so there must inevitably be a reference to facts learned after the warrant has issued in determining where the fugitive was "found".

In this case the petitioner was on bail from the Immigration Service in Manhattan. It is to that office he had to re-

port. If he was sufficiently "in custody" of the Court to support a petition for a writ of habeas corpus because he was enlarged on bail, he was as surely in the custody of the Immigration Service, from which he had also been enlarged on bail. Had he not been bailed he would have been physically confined in the Immigration Service custody whose detention facility is in the Southern District. His enlargement on bail still left him as a person to be "found" in this District.

The petitioner relies on Pettit v. Walshe, 194 U.S. 205, 24 S.Ct. 657, 48 L.Ed. 938 (1904) as requiring that the petitioner should have been brought before a Judge of the Eastern District. But *Pettit* involved a situation where the warrant was issued out of the Southern District of New York to a Marshal in Indiana who attempted to bring the fugitive back to New York on the Southern District warrant. The Supreme Court emphasized, in holding that the fugitive could not be brought to New York, that the crime charged had to be on such evidence of criminality as would justify his commitment for trial in the place in which he was found. The Court noted that since the laws of the various *States* of the Union differed, the extraditee had the right to be judged by *State* law in the place where he was found.

We are not here dealing with the laws of different States. Both the Eastern and Southern Districts are in New York State. The law in Manhattan is the same as the law in Brooklyn.

There are also significant additional contacts to the Southern District. The petitioner has contracted to buy a house in Monsey, New York, which is in this District. He engages in his business of commodity trading from an office in Manhattan. He is no stranger to this District.

If there had been some prejudice to the petitioner because he did not get his hearing on the other side of the East River, due process might warrant the Court in straining for a different result. But he had a fair hearing within a half

hour subway ride of his present abode. He lost nothing procedurally though, of course, he did lose his case. The loser often wishes he had had a different judge but self-pity is not the equivalent of prejudice.

## III

## THE EVIDENCE TO SUSTAIN THE CHARGE

■ The test, as we have seen, is whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty. Fernandez v. Phillips, *supra*. The petitioner contends simply "that there is *no* competent evidence of guilt in this record under the applicable New York and Federal law." The contention is based on the alleged inadmissibility of the evidence which Judge Pollack considered.

The petitioner makes two points: (1) that the transcript of the testimony taken in Israel (with English translation) did not conform to the requirements of 18 U.S.C. § 3190 for lack of a proper certificate of the United States Ambassador in Israel; and (2) that since the enactment of Section 180.60(8) of the New York Criminal Procedure Law barring hearsay evidence at a preliminary hearing, the Government's proof by just such hearsay evidence did not meet the standard required by the treaty.

1. The petitioner concedes that 18 U.S.C. § 3190 greatly liberalizes the usual rules of evidence in extradition proceedings. That section provides:

"Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of

the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required."

He contends, however, that Judge Pollack erred in admitting and referring to the written testimony of the witnesses in the Israeli Court as "the duly certified and authenticated record."

The basis for the claim that the documents were not properly certified by the United States Ambassador in Israel is that the certificate of the Ambassador refers only to the "Statement of Charge, Application for Arrest and Order to Compel Attendance" and fails to refer to the Court testimony of the witnesses as also being entitled to being received in evidence in Israel.

■■■ The exhibit shows that the testimony was contained in a single dossier sent to the Department of State under the certification of the Ambassador bound with a single red ribbon. Since the Ambassador could not, of his own knowledge, know the law of Israel, he had to rely on the Israeli authorities to inform him. When they sent him the testimony at issue for extradition purposes they were informing him that he could properly certify the documents. And while it would have been better for the Ambassador, if he did not have enough room to list all the documents on the printed form of certificate to have attached an allonge, his failure to do so creates no doubt of his intention to certify the entire bundle.

In any event, the documents are clearly those of the Israeli Court and, if anything can be judicially noticed, it is that a Court will accept its own documents without further authentication.

The documents are attested as "minutes of the evidence taken by the District Court Tel Aviv-Yaffo in criminal file 42/71 (140 pages) and exhibits submitted by the parties in the above criminal file" by Joseph Levy, Clerk of the District Court. Levy's signature is attested to by David Bar-Ophir, Registrar, Magistrate's Court, Tel Aviv-Yaffo, and the latter's signature and seal are further certified by Dorothy M. Barker, Acting Consul General of the United States. Each page of the Hebrew text bears the stamp of the District Court of Tel Aviv-Yaffo. (See Article X of the Convention.)

The testimony moreover shows that the witnesses were examined in open court before a judge.

■■■ The documents are, therefore, literally within the language of Section 3190 even without the Ambassador's certificate which is only an alternate mode of proof. Desmond v. Eggers, 18 F.2d 503, 505 (9 Cir. 1927).

The next point of contention is that the testimony of the witnesses in the Israeli Court is technically hearsay and that extradition is permitted under Article V of the Convention only upon evidence "sufficient, according to the laws of the place where the person sought shall be found . . . to justify his committal for trial." Arguing from the premise that State law rather than federal law is meant, the petitioner notes that in New York hearsay evidence may no longer be used at a preliminary hearing. N.Y.Cr.Proc.L. § 180.60(8), McKinney's Consol.Laws, c. 11–A. Ergo, he says that if this were a hearing on a charge of crime in New York State the recorded testimony from Israel would not be competent; and there is no other evidence.[1]

■■■ Judge Pollack knocked the argument down quite easily. He wrote convincingly: "The evidence produced by the United States on behalf of Israel satisfied the treaty requirement because it was taken in Israel in a manner ac-

---

1. While we generally look to State law in extradition matters the rule is not a hard and fast one. The fugitive may not shop around to find a State where "the offense charged is not punishable." Garcia- Guillern v. United States, 450 F.2d 1189, 1192, n. 1 (5 Cir. 1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972).

ceptable under New York's standards." I agree. The question is one of intention of the drafters of the Convention. It would be hard to suppose that the parties intended a rule as impractically restrictive of international extradition as would be the rule which the petitioner urges upon us. The parties to the Convention did not intend to require their own citizens to be sent to testify in the other country in person, for that "would defeat the whole object of the treaty." Bingham v. Bradley, 241 U.S. 511, 517, 36 S.Ct. 634, 637, 60 L.Ed. 1136 (1916). The purpose was rather to assure that the conceptions of what constitutes due process are mutual. Mutuality is assured if the test is what a signatory would have thought sufficient to charge a person with crime if the charge had been laid in its own territory. Authority goes even further. As Mr. Justice Brandeis said in Collins v. Loisel, 259 U.S. 309, 317, 42 S.Ct. 469, 472, 66 L.Ed. 956 (1922): ". . . unsworn statements of absent witnesses may be acted upon by the committing magistrate, although they could not have been received by him under the law of the state on a preliminary examination." But assuming that this Convention limits the broad language of the Supreme Court, the test of mutuality still applies to defeat the petitioner's argument.

▇ Here the statements are not unsworn; they are sworn in the formal atmosphere of a court proceeding. Judge Pollack was clearly right in receiving the evidence and in treating it as competent.

▇ The next point of inquiry is whether the evidence, though competent, was also sufficient. The evidence is thoroughly reviewed by Judge Pollack in his opinion and the analysis need not be repeated. He used the proper test for an extradition hearing. There was evidence of a common plan or scheme between the petitioner and his coventurer Blumberg to lead persons desirous of lending out money at interest to believe that the loan was being guaranteed by a bona fide bank rather than by a corpo-

ration which was wholly owned by the two principals and which was not a bank at all. There was direct testimony by four persons which named the petitioner as having made representations of that nature directly. There were other witnesses who implicated Blumberg in the same scheme, and Blumberg has since been convicted in Israel. The petitioner signed the guarantees which were allegedly given in conjunction with the false representations. As Judge Pollack noted, the law of New York permits the conviction of a person shown to have been party to a common scheme even though a conspiracy is not formally charged. People v. Luciano, 277 N.Y. 348, 14 N.E.2d 433 (1938). And since there is probable cause to find a common fraudulent scheme the petitioner would be chargeable even on a trial with the acts and declarations of his accomplice.

▇ Israel, like the United States, apparently does not try defendants *in absentia*. The case of the petitioner and of Blumberg were severed when the petitioner did not appear. It is natural, therefore, that the thrust of the prosecution's case should have been against Blumberg, the sole defendant on trial, but there is sufficient evidence to indicate the common participation of Shapiro in the scheme at least under the standard of proof required in an extradition hearing. The demanding State does not have to show actual guilt. It has to show only probable cause that the fugitive is guilty. Factor v. Lauberheimer, 290 U.S. 276, 291, 54 S.Ct. 191, 78 L.Ed. 315 (1933); Charlton v. Kelly, 229 U.S. 447, 459–461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913); Sayne v. Shipley, 418 F.2d 679, 685 (5 Cir. 1969); cert. denied, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970).

▇ The petitioner contends, however, that there is an area of discretion of which Judge Pollack erroneously refused to avail himself—that he refused to consider the issue of credibility. The argument is not justified. The committing magistrate is required

merely to determine whether there was competent legal evidence which, under United States (or New York) law would justify commitment for trial, not for conviction, if the crime had been committed here. Collins v. Loisel, *supra,* 259 U.S. at 314, 315, 42 S.Ct. 469.

■■■ While the process of definition is difficult in the area of "probable cause" perhaps it is enough to say that what tends to obliterate probable cause may be considered but not what merely contradicts it.[2] The improbability or the vagueness of testimony may destroy the probability of guilt, but the tendering of witnesses who testify to an opposite version of the facts does not. The latter must await trial on the merits. And exclusion of evidence relating to the defense is not error. Collins v. Loisel, *supra,* at 316, 42 S.Ct. 469. So long as there remains enough competent evidence to sustain the burden of establishing probable cause, even the erroneous exclusion of other evidence will not render the detention illegal. Charlton v. Kelly, *supra,* 229 U.S. at 461, 33 S.Ct. 945 (1913). "Although at a hearing of this type the fugitive has a right to introduce evidence, the right is limited to testimony which explains rather than contradicts the demanding country's proof, and its precise scope is largely in the Commissioner's discretion." United States ex rel. Petrushansky v. Marasco, 325 F.2d 562, 567 (2 Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 969, 11 L. Ed.2d 971 (1964). "There is not and cannot well be any uniform rule determining how far an examining magistrate should hear the witness produced by an accused person." Charlton v. Kelly, *supra,* 229 U.S. at 461, 33 S.Ct. at 949.

■■■ The petitioner argues, nevertheless, that he should have been permitted to bring witnesses from Israel to testify on his behalf in the extradition hearing. There is no such requirement in international extradition. See Merino v. United States Marshal, 326 F.2d 5, 12 (9 Cir. 1962); Jiminez v. Aristeguieta, 311 F. 2d 547 (5 Cir. 1962). And the delays implicit in restricting the discretion of the committing magistrate in this regard would be grave, indeed.

## IV

The petitioner next contends that all but two of the offenses with which he is charged are not extraditable under the Convention. It is conceded that the crime of "deceit" or "larceny by false pretenses" and the crime of "theft by a depositary" are extraditable offenses under the terms of the Convention. It is contended, however, that the other counts are not extraditable offenses.

■■■ The petitioner relies on the recognized rule that the country of asylum may limit the trial of the fugitive in the demanding country to those crimes which have been shown to be extraditable offenses in law and where probable cause has been shown on the evidence. So, for example, extradition of a fugitive has been held proper for embezzlement but not for murder. Jiminez v. Aristeguieta, 311 F.2d 547, 551–52. And treaties generally provide for recognition by the demanding state of the limitation upon the offenses that may be tried. See Johnson v. Browne, 205 U.S. 309, 317–318, 27 S.Ct. 539, 51 L.Ed. 816 (1907) (U.S.-Israel Convention Art. XIII).

There is no such limitation based on nomenclature alone. "It is immaterial that the acts in question constitute the crime of theft and fraud in Canada and the crime of larceny in New York State. It is enough if the particular acts charged are criminal in both jurisdictions." Collins v. Loisel, 259 U.S. 309,

2. In the classic definition of Chief Justice Marshall, sitting as a committing magistrate in the treason prosecution of Aaron Burr, he required only evidence "furnishing good reason to believe that the crime alleged had been committed by the person charged with having committed it." United States v. Burr, 25 Fed.Cas. pp. 2, 12, No. 14,692a (C.C.D.Va.1807).

42 S.Ct. 469, 66 L.Ed. 956 (1922). U. S. ex rel. Rauch v. Stockinger, 269 F.2d 681, 687 (2 Cir. 1959).

Nomenclature aside, we must determine whether each count sets forth acts which are criminal both in Israel and New York. The Government contends that every count of the 19 count statement of charge contains at least one extraditable offense.

Article II of the Convention lists the following among the extraditable offenses: 12. Larceny; 13. Embezzlement; 14. Obtaining money . . . by false pretenses; 17. Receiving money or other property knowing the same to have been unlawfully obtained; 18. Fraud by a bailee, banker, agent, factor, trustee, executor, administrator or by a director or officer of any company; 19. Forgery . . . or uttering what is forged; 23. Perjury; subornation of perjury.

■ A thorough review of the evidence shows that probable cause exists to believe that the petitioner committed the crime of deceit on the facts adduced in support of counts 2 through 17, recognizing the nexus as a common scheme and plan. Counts 1, 18 and 19 will be discussed separately.

Count 1 charges a conspiracy to commit a felony, to wit, deceit, as well as a conspiracy to defraud. The Convention has a special provision concerning conspiracy. That provision reads (Art. II): "Extradition shall also be granted for attempts to commit or conspiracy to commit any of the offenses mentioned in this Article provided such attempts or conspiracy are punishable under the laws of both Parties by a term of imprisonment exceeding three years."

It is also provided, however, that "extradition shall also be granted for participation in any of the offenses mentioned in this Article."

■ The petitioner argues quite convincingly that under New York law the conspiracies charged are misdemeanors carrying a penalty of less than three years. Hence, he deduces that Count 1 does not state an extraditable offense.

That might be the result if the only charge were conspiracy without a substantive offense. In that case the extent of the penalty would be assumed to measure the gravity with which the conspiracy was regarded in the respective countries. But where the substantive offense is charged as well, there is no reason either in logic or in the literal language to require the demanding country to drop the conspiracy count. That such result was not intended is evidenced by the ultimate sentence quoted above. "Participation" is not defined, but unless it means joint action with another it is redundant, for it has already been agreed that "persons shall be delivered up according to the provisions of the present Convention for prosecution when they have been charged with . . . any of the following offenses . . ." (31 offenses are listed).

The pattern of the Convention seems to make irrelevant the three year limitation on conspiracy where the substantive offense is also charged. This conclusion is fortified by the coupling of conspiracy with "attempts"—the classic *uncompleted* act.

Counts 18 and 19 charge a separate criminal transaction. The charge is that the petitioner and Blumberg procured an employee of the Bank Agudat Israel, Ltd. named Shatsdrovitski, to withhold from the clearing house a check drawn on the Agudat Bank which had been deposited by the accused in their own Bank. It is apparently the Israeli banking practice to honor a check deposited by a customer unless by a certain hour the check is dishonored by the drawee bank. The scheme alleged was to hide the check for which there were insufficient funds so that the drawee bank could not affirmatively dishonor it and so that the collecting bank would erroneously believe that the check had cleared. The check was hidden pursuant to plan, but it was found in time to prevent the crediting of the proceeds to the accused.

The petitioner is charged in the 18th count with (1) conspiracy to commit de-

ceit; (2) conspiracy to defraud; (3) theft; and (4) concealment with intent to deceive.

The petitioner argues that "concealment with intent to deceive" is not within Article II of the Convention and that the two conspiracy charges and the "theft" charge are not extraditable under the Convention because of its provisions concerning limitations.

Article VI of the Convention provides that extradition shall not be granted: "3. When the prosecution . . . for the offense has become barred by lapse of time according to the laws of the requesting party or would be barred by lapse of time according to the laws of the requested party had the offense been committed in its territory."

The contention is that the prosecution of Shapiro would be barred in New York because the check itself was a worthless piece of paper and could only be the subject of "petit larceny." N.Y. Penal Law § 155.25, McKinney's Consol.Laws c. 40. "Petit larceny" is "a class A misdemeanor" for which prosecution must begin within two years after its commission. N.Y. Penal Law § 30.10. The theft of the check was allegedly committed on May 24, 1970, more than two years before the commencement of extradition. I hold that extradition for the theft—"petit larceny" is, therefore, proscribed by the Convention. Nor is the crime of "concealment with intent to deceive" an extraditable offense under the category of offenses listed in the Convention.

Count 19 charges the petitioner with attempting to procure Shatsdrovitski to make a false statement in connection with the concealment of the check. Since the matter was then the subject of official investigation it was likely to require a statement under oath at some stage of the proceedings. The charge is quite simply subornation of perjury which is an extraditable offense under the Convention.

The petition for a writ of habeas corpus is denied.

The stay of Judge Pollack's order is continued until February 2, 1973 at 4 p. m. to enable the petitioner to apply for a stay from a Judge of the Court of Appeals for the Second Circuit.