**In the Matter of the EXTRADITION OF Sukhminder SINGH a/k/a "Sukhi".**

**In the Matter of the EXTRADITION OF Ranjit Singh GILL a/k/a "Kukki".**

**Nos. 87–6160G–01, 87–6161G–01.**

United States District Court, D. New Jersey.

Nov. 2, 1987.

Judy G. Russell, Sp. Asst. U.S. Atty., Newark, N.J., for plaintiff.

William M. Kunstler, Ronald L. Kuby, New York City, for defendants.

## OPINION AND ORDER

RONALD J. HEDGES, United States Magistrate.

## INTRODUCTION

Defendants Suhkminder Singh and Ranjit Singh Gill, by Notice of Motion filed September 16, 1987, have again moved to compel certain discovery. The Court has considered their motion papers, together with the Government's letter brief in opposition dated September 26, 1987. Oral argument was conducted on October 26, 1987.

## DISCUSSION

Defendants reargue certain of their earlier requests for discovery which were denied by Letter–Order filed July 31, 1987. See Opinion filed September 1, 1987; Supplemental Opinion filed September 11, 1987.[1] The Court remains satisfied that it has correctly addressed the requests again in issue. Accordingly, the pending motion warrants only limited discussion.

First, defendants seek to depose all eyewitnesses. They offer the following:

As discussed earlier, the reliability and credibility of the government's witnesses are legitimate areas of inquiry. It is completely proper to introduce evidence which would rebut or obliterate probable cause by showing that witnesses had been induced or threatened into cooperating, or that the government had suggested testimony or otherwise induced the witness to make false or misleading statements. *See, e.g., Republic of France*, 617 F.Supp. at 781–784. While the government does not have to produce its witnesses for cross-examination, the

defense must be given a reasonable opportunity to present other evidence which destroys the reliability of the government's affidavits.

The reliability of the photographic identifications is also subject to challenge. This Court previously held that the facts and circumstances surrounding the identifications were not discoverable, as they were not 'explanatory' and were not properly presented in a preliminary examination. Opinion, at 19–20. Neither argument withstands scrutiny. [Paragraphs 32 and 33, Affirmation of Ronald L. Kuby].

■ The short answers to this request are that defendants may not attack an affiant's credibility in this extradition proceeding, see Opinion filed September 1, 1987 at 3, and that such broad discovery would convert this proceeding into a full scale trial. See Opinion filed September 1, 1987 at 3–4, 17. Government's letter brief in opposition at 2. Nor do the decisions cited by defendants support their position.

In *Republic of France v. Moghadam*, 617 F.Supp. 777 (N.D.Ca.1985), the court discussed the existence of probable cause as follows:

Extradition hearings under 18 U.S.C. § 3184 are in the nature of a preliminary hearing where the magistrate need only determine if there is probable cause which justifies the holding of the accused to answer to a charge. *Charlton v. Kelly*, 229 U.S. 447, 460, 33 S.Ct. 945, 949, 57 L.Ed. 1274 (1913); *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir.1969), *cert. denied*, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970).

There is no uniform rule by which to determine how much evidence the court should hear. *Charlton*, 229 U.S. at 461, 33 S.Ct. at 949. Therefore the scope of evidence admitted is left to the sound discretion of the court guided by the distinction between contradictory and explanatory evidence set out below. *Hook-*

---

1. Defendants, in the Affirmation of Ronald L. Kuby, take issue with this Court's earlier characterization of their requests as being "specific." The Court is well aware of the nature of the discovery requests made by defendants. See Transcript of July 16, 1987 conference at p. 5, 1. 2 to p. 12, 1. 10.

*er v. Klein,* 573 F.2d 1360, 1369 (9th Cir.), *cert. denied,* 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978).

Because of the narrow scope of the extradition hearing, the accused cannot introduce evidence which would be admissible at trial on the issue of guilt, but can introduce evidence rebutting probable cause. *While the accused may produce evidence to explain matters, the court may exclude evidence which merely contradicts government testimony, poses conflicts of credibility or establishes a defense. See Collins v. Loisel,* 259 U.S. 309, 315–16, 42 S.Ct. 469, 471–72, 66 L.Ed. 956 (1922) (permissible evidence is that 'which might have explained ambiguities or doubtful elements in the prima facie case ...' and excludable evidence is that relating strictly to the defense.); *Hooker v. Klein,* 573 F.2d at 1369 ('evidence of facts contradicting the demanding country's proof or establishing a defense may properly be excluded.'); *Matter of Sindona,* 450 F.Supp. 672, 685 (S.D.N.Y.1978) ('the accused has no right to introduce evidence which merely contradicts the demanding country's proof, or which only poses conflicts of credibility').

Courts have struggled to clarify the distinction. In *Sindona,* 450 F.Supp. at 685, the court stated that explanatory evidence is 'reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause.... The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits.' *Shapiro v. Ferrandina,* 355 F.Supp. 563, 572 (S.D.N.Y.) *modified and affirmed,* 478 F.2d 894 (2d Cir.) *cert. diss'd,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973) held that the magistrate should permit evidence that 'tends to obliterate probable cause ... but not what merely contradicts it. The improbability or the vagueness of testimony may destroy the probability of guilt, but the tendering of witnesses who testify to an opposite version of the facts does not.'

The probable cause standard applicable in extradition proceedings is defined un-

der Federal law. *Sindona v. Grant,* 619 F.2d 167, 175 (2d Cir.1980). Defendant argues that the government has not met the federal probable cause standard which requires 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.' *Coleman v. Burnett,* 477 F.2d 1187, 1202 (D.C.Cir.1973). *Moghadam relies principally on the existence of the recantation letter as obliterating probable cause. In addition he stresses the conduct of law enforcement officials in this country, especially what he considers to be overreaching on the part of the United States government in seeking extradition to France.*

The most significant aspect of the probable cause determination is Custer's recantation letter which was later withdrawn. In *Application of D'Amico,* 185 F.Supp. 925, 930 (S.D.N.Y.1960), *appeal diss'd sub nom. United States ex rel D'Amico v. Bishopp,* 286 F.2d 320 (2d Cir.), *cert. denied sub nom. Farace v. D'Amico,* 366 U.S. 963, 81 S.Ct. 1924, 6 L.Ed.2d 1254 (1961) the court considered the fact that testimony against the defendant was recanted by the witness. The court stated that the 'testimony of an accomplice is to be viewed with healthy scepticism.... Where, as here, such testimony has been completely recanted, its probative value is thin indeed.' Because of the recantation, the court held that there was grave doubt as to whether the evidence demonstrated reasonable grounds to believe defendant was guilty of the charged crime.

The Seventh Circuit has held that a court is entitled to exclude recantations of earlier statements on the grounds that the recantation merely contradicted or challenged the credibility of facts implicating the extraditee, *Eain v. Wilkes,* 641 F.2d 504, 511 (7th Cir.), *cert. denied,* 454 U.S. 894, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). The facts of *Eain,* however, are distinguishable from the instant case. In *Eain* defendants had made inculpatory statements before an Israeli police officer sworn to be true before an Arabic

speaking judge who conversed with defendants in Arabic and determined that they understood their statements and made the confessions of their own free will. The offered recantations, in contrast, were made to private counsel while the defendants were in prison. *Id.* The original statements therefore had more indicia of reliability than the recantations. The instant factual situation is the opposite, Custer's initial statement made before a French magistrate was self-serving since she attempted to shift the bulk of the blame to Moghadam. Subsequently she used her accusations against Moghadam as a bargaining chip with the DEA and in fact offered to 'do whatever it takes' to get out of the 'hell hole' of a French jail. In contrast the recantation was not self-serving in any fashion. In fact, quite to the contrary, the recantation went against Custer's self interest in being transferred from the French jail. Thus Custer's recantation appears to have more indicia of reliability than the original accusations. *See United States v. Estrada,* 733 F.2d 683, 686 (9th Cir.), *cert. denied,* 469 U.S. 850, 105 S.Ct. 168, 83 L.Ed.2d 103 (1984) (statements against interest by informant carry added indicia of reliability).

*The recantation evidence here is critical and must be given substantial consideration for it goes to more than just the credibility of a witness, it negates the only evidence of probable cause.* Furthermore, the substance and circumstances of the recantation indicate that it has more indicia of reliability than the original accusations.

Charla Custer subsequently withdrew her recantation under circumstances that are not entirely clear. There is at least some evidence of a veiled 'threat' by the government that if Custer did not withdraw her recantation she would spend substantial time in the French jail. *The whole of Custer's behavior, including her initial desperation to strike a deal in order to be transferred from France, the almost hysterical tone of her accusations, her subsequent spontaneous and total recantation of the accusations and the unexpected withdrawal of that recantation relate to more than just her credibility as a witness. These facts are relevant to her basic competence to testify and the inherent reliability of the only evidence tending to show probable cause.* This is more than a self-serving recantation or 'the mere presentation of witnesses who testify as to an opposite version of facts,' it is evidence that goes to the 'improbability or vagueness of testimony' that may destroy the probability of guilt. *Freedman v. United States,* 437 F.Supp. 1252, 1266 (N.D.Ga.1977). *See also Shapiro v. Ferrandina,* 355 F.Supp. [563] at 572 [S.D.N.Y.1973].

*Furthermore, the instant situation presents special concerns that demand a heightened scrutiny by this court in the interest of justice.* Prior to the extradition, the government was in the midst of instituting deportation proceedings against Moghadam, but was stymied because there was no country willing to accept him and Iran (his native land) is not a country to which he may be deported because of the political condition there. If Moghadam is extradited to France, even if found innocent of the charges against him in that country, he will not be able to reenter the United States where his wife and child reside. The harsh results of an erroneous extradition based on untrustworthy accusations militate against this court's applying too lenient a standard of review in determining probable cause.

The government argues that there is corroborating evidence for Custer's testimony, including the statement of Catherine MacNeil (Custer's traveling companion) implicating Moghadam; the letter written in Farsi seized from Custer implicating Moghadam; hotel records showing that Custer telephoned a number connected to Moghadam; and the fact that Moghadam has a recent conviction for heroin importation. Most of this evidence, however, is either ambiguous or was explained away by the recantation.

Furthermore, the fact that the government appears to have been somewhat overzealous in the extradition proceed-

ings, while not rising to the level of clear misconduct, also casts doubt on the presence of probable cause. Custer was aware that the government was anxious to extradite Moghadam and she clearly attempted to profit from that prosecutorial zeal. Agent Fiorentino admittedly stated to Custer's finance, DeFoe, that it was unfortunate that she had recanted and if she did not return to her original story she might serve seven to eight years in French prison. It is only reasonable to presume that Custer learned of this veiled 'threat' and may have been influenced by it in the withdrawal of her recantation. *These circumstances cast additional doubt on what is already highly questionable evidence.*

For all of the above reasons, the court concludes that the government has failed to meet its burden of showing probable cause to extradite Moghadam to France. [617 F.Supp. at 781–84 (emphasis added) (footnotes omitted)].

Even assuming that *Moghadam* was correctly decided, it may be explained as an example of heightened judicial scrutiny due to apparent Government misconduct and the inherent incredibility of a witness who furnished the only evidence of probable cause. Contrariwise, there is no allegation of Government misconduct here. Likewise, the affidavits submitted by the Government demonstrate that eyewitness statements will not be the sole evidence bearing on probable cause.

In *Freedman v. United States*, 437 F.Supp. 1252 (N.D.Ga.1977), the court, on *habeas* review, also considered the existence of probable cause:

The remainder of petitioner's arguments are addressed to the sufficiency of the evidence to warrant the magistrate's finding of probable cause. It is well established that the appropriate standard to review the magistrate's finding is 'whether the evidence showed a reasonable ground to believe the accused guilty,' *Garcia–Guillern v. United States, supra* [450 F.2d 1189 (5th Cir. 1971)]. Petitioner has argued by analogy to the test fashioned by the Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), a

magistrate in making a determination as to whether a search warrant should issue on the basis of an affidavit should involve himself in a determination as to the reliability of the affidavits presented and not merely blindly believe such statements without regard to the underlying facts upon which the officer believed that the information was reliable. *We agree with petitioner's theory that the magistrate need not wholly ignore the credibility and reliability of the complaining witness or affiant, see Jaben v. United States,* 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965) *rehearing denied,* 382 U.S. 873, 86 S.Ct. 19, 15 L.Ed.2d 114, however, we find that the magistrate did not depart from such rule in his finding of probable cause.

*In turning to review the finding of probable cause, we are mindful of the 'well-entrenched rule that extradition proceedings are not to be converted into a dress rehearsal trial.' Jhirad v. Ferrandina, supra,* 536 F.2d [478] at 484 [2nd Cir.1976]; *Charlton v. Kelly,* 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913).

The Crown's case consisted of certain documentary evidence, admissible in accordance with 18 U.S.C. § 3190, as well as the live testimony of Corporal Kossatz of the RCMP. At the close of petitioner's case, *the magistrate rejected the Varah affidavit on grounds of unreliability, and observed that the sole remaining basis for probable cause was Sergeant McIlvenna's affidavit as to his investigation and discussions with Edwin Lynch.* The magistrate, therefore, called Corporal Ross Oake as the Court's witness in an attempt to bolster the Crown's case through corroboration, particularly with respect to the Lynch discussion and the statements made by Lynch which incriminated Freedman. On cross-examination, it was learned that a tape recording had been made of the interview and a portion of the tape was produced which contained approximately thirty minutes out of a three and one-half hour interview. Petitioner moved to dismiss the proceeding or for production of

the original tape for purposes of scientific investigation.

Petitioner contends that the transcript of the tape did not corroborate Corporal Oake's recollection of the conversation, that the transcript was exculpatory of Freedman, and that this court must presume the original tape was intentionally destroyed or was being deliberately concealed. This court has reviewed and examined the transcript of the portion of the tape produced. While the transcription is indeed sketchy, and numerous passages and words were evidently inaudible, the tape does include certain of Lynch's remarks incriminating petitioner, therefore, petitioner's contentions in this respect are without merit. *Nor do we believe that we must draw any impermissible or derogatory conclusions from McIlvenna's failure to appear since affidavits are clearly admissible and petitioner has no right to demand the presence and testimony of foreign witnesses.* [437 F.Supp. at 1265–66 (emphasis added) (footnotes omitted)].

*Freedman* is not a command to consider the credibility and reliability of an affiant. In any event, it is clear from a reading of *Freedman* that the credibility and reliability of the affiant were considered there only on the basis of his affidavit.

Both *Moghadam* and *Freedman* relied on *Shapiro v. Ferrandina,* 355 F.Supp. 563 (S.D.N.Y.), *modified,* 478 F.2d 894 (2d Cir.), *cert. dismissed,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). The court in *Shapiro,* on *habeas* review, discussed credibility as follows:

The petitioner contends, however, that there is an area of discretion of which Judge Pollack erroneously refused to avail himself—that he refused to consider the issue of credibility. The argument is not justified. The committing magistrate is required merely to determine whether there was competent legal evidence which, under United States (or New York) law would justify commitment for trial, not for conviction, if the crime had been committed here. *Collins v. Loisel, supra,* 259 U.S. at 314, 315, 42 S.Ct. 469 [at 471].

While the process of definition is difficult in the area of 'probable cause' *perhaps it is enough to say that what tends to obliterate probable cause may be considered but not what merely contradicts it. The improbability of the vagueness of testimony may destroy the probability of guilt, but the tendering of witnesses who testify to an opposite version of the facts does not.* The latter must await trial on the merits. And exclusion of evidence relating to the defense is not error. *Collins v. Loisel, supra,* at 316, 42 S.Ct. 469 [at 472]. So long as there remains enough competent evidence to sustain the burden of establishing probable cause, even the erroneous exclusion of other evidence will not render the detention illegal. *Charlton v. Kelly, supra,* 229 U.S. at 461, 33 S.Ct. 945 [at 949, 57 L.Ed. 1274] (1913). 'Although at a hearing of this type the fugitive has a right to introduce evidence, the right is limited to testimony which explains rather than contradicts the demanding country's proof, and its precise scope is largely in the Commissioner's discretion.' *United States ex rel. Petrushansky v. Marasco,* 325 F.2d 562, 567 (2 Cir.1963), *cert. denied,* 376 U.S. 952, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964). 'There is not and cannot well be any uniform rule determining how far an examining magistrate should hear the witness produced by an accused person.' *Charlton v. Kelly, supra,* 229 U.S. at 461, 33 S.Ct. at 949.

The petitioner argues, nevertheless, that he should have been permitted to bring witnesses from Israel to testify on his behalf in the extradition hearing. There is no such requirement in international extradition. See *Merino v. United States Marshal,* 326 F.2d 5, 12 (9 Cir. 1962); *Jiminez v. Aristeguieta,* 311 F.2d 547 (5 Cir.1962). And the delays implicit in restricting the discretion of the committing magistrate in this regard would be grave, indeed. [355 F.Supp. at 571–72 (emphasis added) (footnote omitted)].

It must be borne in mind that the Government's proofs in *Shapiro* consisted of hearsay, 355 F.Supp. at 569, and that extradi-

tion proceedings must not be converted into a dress rehearsal trial.

Assuming *Shapiro* and *Freedman* to have been correctly decided, those decisions may be reconciled with the principles recognized by this Court (that defendants may not attack credibility and that the Government may introduce hearsay) by limiting consideration of an affiant's credibility and reliability to the content of his affidavit. This is implicit from *Freedman's* citation to two Supreme Court decisions, *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964) and *Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).

In *Aguilar*, the Supreme Court held that an affidavit supporting a search warrant must contain sufficient information pertaining to a confidential informant to permit a magistrate to determine that the informant was credible or his information reliable. The Court stated:

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States*, 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, *see Rugendorf v. United States*, 376 U.S. 528 [84 S.Ct. 825, 11 L.Ed.2d 887], was 'credible' or his information 'reliable.' [378 U.S. at 114, 84 S.Ct. at 1514 (footnote omitted)].

Similarly, in *Jaben*, the Court discussed the function of a reviewing magistrate:

> a magistrate is intended to make a neutral judgment that resort to further criminal process is justified. A complaint must provide a foundation for that judgment. It must provide the affiant's answer to the magistrate's hypothetical question, 'What makes you think that the defendant committed the offense charged?' This does not reflect a re-

quirement that the Commissioner ignore the credibility of the complaining witness. There is a difference between disbelieving the affiant and requiring him to indicate some basis for his allegations. Obviously any reliance upon factual allegations necessarily entails some degree of reliance upon the credibility of the source. See, e.g., *Johnson v. United States*, 333 U.S. 10, 13 [68 S.Ct. 367, 368, 92 L.Ed. 436]. Nor does it indicate that each factual allegation which the affiant puts forth must be independently documented, or that each and every fact which contributed to his conclusions be spelled out in the complaint. Compare *United States v. Ventresca*, 380 U.S. 102 [85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ]. It simply requires that enough information be presented to the Commissioner to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process. [381 U.S. at 224–25, 85 S.Ct. at 1371 (emphasis added) ].

*Aguilar* and *Jaben* suggest that, when a court in an extradition proceeding is presented with evidence through affidavits, the court may conclude, on review of the affidavits submitted, that there are insufficient *indicia* of reliability or credibility to establish probable cause. However, none of the decisions discussed above establish that defendants are entitled to go "behind" an affidavit to depose affiants in the expectation of producing evidence bearing on reliability or credibility. Indeed, were defendants to do so the Court would be faced with making a determination of reliability and credibility from affidavits and deposition transcripts. Alternatively, the Government would be compelled to produce witnesses here. That is simply too close to the dress rehearsal trial the Court must avoid.[2]

The recent decision of the Supreme Court in *California v. Superior Court of California*, 482 U.S. 400, 107 S.Ct. 2433, 96 L.Ed.2d 332 (1987), lends limited support for a denial of defendants' request for dep-

---

**2.** Defendants, at oral argument, contended that they had a right to conduct at least limited depositions of affiants. The Court rejects this contention for the reasons described herein and in its earlier opinions.

ositions. In *California*, the Supreme Court approved the *interstate* extradition of two California residents to stand trial for kidnapping in Louisiana, despite the fact that there appeared to be "no reasonable possibility that the charges ... are valid." 107 S.Ct. at 2441 (Stevens, J., dissenting). The majority of the Court reviewed the Louisiana information filed against the California residents, together with the affidavit on which it was based, and concluded:

> [i]f we accept as true every fact alleged, the Smolins [the California residents] are properly charged with kidnaping under Louisiana law. In our view, this ends the inquiry into the issue of whether or not a crime is charged for purposes of the Extradition Act [18 U.S.C. § 3182]. [107 S.Ct. at 2439].

This conclusion was consistent with the Court's observation that

> [t]he language, history, and subsequent construction of the Extradition Act make clear that Congress intended extradition to be a summary procedure. As we have repeatedly held, extradition proceedings are 'to be kept within narrow bounds'; they are 'emphatically' not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party. *Biddinger v. Commissioner of Police*, 245 U.S. 128, 135, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917).... Those inquiries are left to the prosecutorial authorities and courts of the demanding State, whose duty it is to justly enforce the demanding State's criminal law—subject, of course, to the limitations imposed by the Constitution and laws of the United States.... The courts of asylum States may do no more than ascertain whether the requisites of the Extradition Act have been met. [107 S.Ct. at 2438 (emphasis added)].

The depositions sought by defendants, when considered against the issues they seek to raise at their extradition hearing and the inevitability of contradictory proofs

being submitted by the Government, would convert this proceeding into a trial. That cannot be allowed.[3]

■ Second, defendants seek discovery of the "Bains Commission Report." The report is described by defendants as follows:

> In 1985, retired Punjab and Haryana Supreme Court Judge Ajit Singh Bains was appointed, by the Punjab government, to lead a four-man commission. The Bains Commision, as it was called, was asked to investigate the over two thousand arrests of Sikhs by security forces, over a four-year period. Upon information and belief, the Commission concluded that almost 90% of the cases against the Sikh detainees had been fabricated. This conclusion was based solely upon the evidence presented by the police themselves, without the need to hear from defense attorneys or independent witnesses.
>
> One of these fabricated cases related to false charges brought against Sukhminder Singh and Ranjit Singh Gill, involving an attempted murder in Ludhiana. Both defendants were named as defendants. The police subsequently were unable to produce any evidence to substantiate the charges, and the Bains Commission concluded that the charges were wholly fabricated. Exhibit B.
>
> Unfortunately, the Indian Government has completely suppressed the Bains Commission Report. The report has never been published, because of its harsh criticism of the very police practices at issue here. The report is completely unavailable from any source other than the Indian Government. Accordingly, the Bains Commission Report should be ordered produced for the defense.
>
> As noted earlier, evidence of police overzealousness and misconduct is admissible as to the question of probable cause. The fact that Indian authorities would go so far as to manufacture an entire fraudulent case against these defendants

**3.** The Court appreciates the fundamental distinction between an *interstate* extradition proceeding and an *international* one. Among other things, in an interstate extradition the demanding State must enforce its criminal law subject to the Constitution and the laws of the United States, as the Supreme Court noted in *California*. There is no such restriction on the demanding foreign state in an international extradition proceeding.

would cast serious doubt upon the credibility and reliability of the government's other evidence. And the Bains Commission Report is obviously relevant to the application of the political offense exception.

Production of this document would not materially affect the length of the proceedings, nor would it constitute a 'rummaging' through the files of the Indian Government. [Paragraphs 42–46, Kuby Affirmation].

There is simply no reason for this discovery to be allowed. *See Quinn v. Robinson,* 783 F.2d 776, 817 n. 41 (9th Cir.1986), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1987).

Even assuming "evidence of police overzealousness and misconduct" to be admissible, defendants have access to the former Indian judicial officer whose name the report bears, Ajit Singh Bains. Indeed, defendants have submitted to the Court the affidavit of Justice Bains, filed September 29, 1987, in support of their contention that evidence should be admitted as to defendants' fate should they be extradited. The Court has also received, unsolicited, various publications which purport to describe official misconduct toward Sikhs in India.[4] The Court sees no necessity for discovery of the report.

Third, defendants seek discovery as to Sukhdev Singh, whose judicial confession may have implicated them. See Opinion filed September 1, 1987 at 123 F.R.D. 108, 116–117 & n. 11. Defendants submit the following:

Upon information and belief, Sukhdev Singh was subjected to torture and coercion before he made his 'confession.'

The defense seeks to question Sukhdev Singh about the facts and circumstances surrounding his confession, including the nature and extent of any threats, promises, or inducements made. This questioning would take place in India, pursuant to Notice, Commission, and/or Letters Rogatory.

The defense also seeks discovery of facts related to Sukhdev Singh's conditions of confinement, including:

a. Any and all medical care requested by Sukhdev Singh and/or furnished to Sukhdev Singh.

b. Any and all logs or other documents indicating when and whether Sukhdev Singh has had access to counsel.

c. Any and all reports detailing Sukhdev Singh's conditions of confinement, including any complaints received about said conditions.

d. Any and all evidence detailing allegations of torture used against Sukhdev Singh. [Paragraphs 48–50, Kuby Affirmation].

■ The Court has already ruled on this application, see Opinion filed September 1, 1987 at 123 F.R.D. 108, 118, and sees no reason to amplify that ruling other than to note that the grounds on which *Moghadam* distinguished *Eain v. Wilkes,* 641 F.2d 504 (7th Cir.), *cert. denied,* 454 U.S. 894, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981), are not present here, and that there is no issue better designed to convert this proceeding into a dress rehearsal trial than a dispute between defendants and the Government as to whether Sukhdev Singh was coerced into making a confession.[5]

---

**4.** These are *Oppression in Punjab,* published by the Sikh Religious and Educational Trust, Columbus, Ohio, in January 1986; *Hindu–Sikh Conflict in Punjab, Causes & Cure,* published by the Transatlantic India Times, London; *Black Laws 1984,* published by the Peoples Union for Civil Liberties, Delhi; *Army Action in Punjab, Prelude and Aftermath,* published by Samata Era Publication, New Delhi, 1984; *Who are the Guilty?,* published by Gobinda Mukhoty and Rajni Kothari, Delhi, November 1984; and *The Betrayal of the Sikhs,* published by Sikh Ex–Servicemen & Intellectuals Forum, Chandigarh.

The Court's citation of these publications is not intended to demonstrate that it has con-

sidered the contents thereof. The publications are cited merely to demonstrate that defendants appear to have numerous sources of "evidence of police overzealousness and misconduct."

**5.** The Court has also taken into consideration the confession of Sukhdev Singh, the redacted transcript of which was produced by the Government pursuant to Order filed August 31, 1987. The circumstances under which that confession was made are totally different from those which were before the court in *Moghadam.*

Last, defendants seek discovery as to "Secret Witnesses/Unattributed Statements." See paragraphs 53 through 59, Kuby Affirmation. The Court sees no reason to reconsider its prior rulings, see Opinion filed September 1, 1987 at 123 F.R.D. 108, 118–119 & n. 20, other than to note that the "unattributed statements" appear to be, at best, peripheral to the existence of probable cause.

\* \* \*

Defendants frame the pending motion as an application for discovery "pursuant to the Due Process Clause of the Fifth Amendment of the Constitution of the United States." The motion is presumably in response to the Supplemental Opinion filed September 11, 1987.

Defendants ignore that, "[o]nce it is determined that due process applies, the question remains what process is due ... due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *accord Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). The Court has performed the balancing test mandated by the Due Process Clause and has taken into account all appropriate factors. See Supplemental Opinion filed September 11, 1987 at 123 F.R.D. 108, 125–126. Defendants have no constitutional right to the discovery sought.[6]

Accordingly, defendants' motion is denied.

SO ORDERED.

---

**6.** Defendants take particular issue with the proposition that "only the most egregious errors should be of constitutional dimension in extradition proceedings, since a defendant's proofs are limited and 'the mere wrongful exclusion of specific pieces of evidence, however important, does not render the detention illegal.'" Supple-mental Opinion filed September 11, 1987 at 123 F.R.D. 108, 126 n. 1 (*quoting Collins v. Loisel*, 259 U.S. 309, 316, 42 S.Ct. 469, 472, 66 L.Ed. 956 (1922)). Defendants' dispute is with the nature of extradition proceedings. Their recourse is to Congress and not this Court.