**In the Matter of the EXTRADITION OF Jorge Salazar SOLIS aka "El Gordo,"**

**A Fugitive from the Government of United States of Mexico.**

No. 04–9209–CJC (JTL).

United States District Court, C.D. California.

April 12, 2005.

Daniel S. Goodman and Douglas M. Miller of the Office of the United States Attorney, Los Angeles, CA, for the government.

Melissa S. Mitchell, Fountain Valley, CA, for the fugitive.

## ORDER CERTIFYING EXTRADITABILITY

LUM, United States Magistrate Judge.

Extradition proceedings having been brought in relation to the fugitive, Jorge Salazar Solis aka "El Gordo" ("Salazar"), by Complainant United States of America, pursuant to 18 U.S.C. § 3184 and the Extradition Treaty in force between the United States and Mexico ("the Extradition Treaty"), and the undersigned judicial officer having considered the arguments presented by the parties in their papers and at the extradition hearing held January 28, 2005, during which no testimony was offered,

IT IS HEREBY FOUND AND HELD as follows:

(1) The undersigned judicial officer has jurisdiction to conduct extradition proceedings. *See* 18 U.S.C. § 3184; Local Rule 72–1; *Extradition of Mainero,* 990 F.Supp. 1208, 1216 (S.D.Cal.1997).

(2) The undersigned judicial officer has jurisdiction over Salazar because Salazar is presently in custody in this district. *See* 18 U.S.C. § 3184; *Extradition of Mainero,* 990 F.Supp. at 1216.

▇ Jurisdiction is not defeated by the claim of Salazar that his arrest was illegal because it occurred before the issuance of an arrest warrant in the United States or Mexico. "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1039, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *Extradition of Atta,* 706 F.Supp. 1032, 1037 (E.D.N.Y. 1989) (magistrate's decision "to 'divest' himself of jurisdiction" over extradition proceedings because fugitive was illegally

brought to the United States "was erroneous as a matter of law"); *cf.* *United States v. Alvarez–Machain,* 504 U.S. 655, 662–70, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992) (defendant's abduction in Mexico and rendition to the United States for trial fell under the rule that trial court need not inquire how a defendant came before it). Even assuming the facts to be as described by Salazar, the governmental conduct is not "of the most shocking and outrageous kind," *United States v. Matta–Ballesteros,* 71 F.3d 754, 763–64 n. 5 (9th Cir.), *amended,* 98 F.3d 1100 (9th Cir.1996), such that review under the Due Process Clause of the Fifth Amendment might be triggered.

(3) An extradition treaty between the United States and Mexico was in force at all times relevant to this matter. *See* 18 U.S.C. § 3181 (Historical and Statutory Notes); Declaration of Andrew N. Keller, ¶¶ 2–3, found at page 0001 of Filing of Original Formal Extradition Papers ["Formal Papers"], filed November 8, 2004.

(4) Salazar is sought by Mexico for offenses for which the applicable treaty permits extradition. The offenses are punishable both in the State of Durango, Mexico, and in the State of California by deprivation of liberty, the maximum term of which is one year or greater. Aggravated Homicide is punishable under California Penal Code Sections 187 and 190. Attempted Aggravated Homicide is punishable under California Penal Code Sections 187 and 664(a).

Extradition for the offenses charged in Mexico is not precluded by the political offense exception of Article 5(1) of the Extradition Treaty. Under that provision, any question as to whether an offense is a political one is to be resolved by "the Executive authority of the requested Party," which, in this case, is the Secretary of State.

Notwithstanding this, the Court finds that the offense for which extradition is sought was neither political nor of a political character. There has been no evidence presented that either the killing of Jose Manuel Diaz Medina or the attempted killing of Nestor de Jesus Vargas Perez and Norma Rocio Robledo Olvera constituted a political offense within the meaning of the Extradition Treaty. Because the crimes were not "pure political offenses" such as treason, sedition, or espionage—which offenses "have none of the elements of ordinary crimes"—the test that applies is the "incidence test." *Quinn v. Robinson,* 783 F.2d 776, 793 (9th Cir. 1986). That test requires that Salazar establish (1) the occurrence of an uprising or other violent political disturbance at the time of the charged offense, or (2) that the charged offense was incidental to, in the course of, or in furtherance of the uprising. *See Quinn,* 783 F.2d at 797, 817. Salazar offers nothing in support of either prong. He argues only that the mere killing of a political figure is sufficient to transform the crime into a political offense or one of a political character. Salazar cites no authority for his proposition. A court may not rely on a fugitive's mere assurance that a crime had some political purpose. *Barapind v. Enomoto,* 400 F.3d 744, 751 (9th Cir.2005).

(5) Sufficient evidence has been presented to establish probable cause that Salazar, the individual appearing before the undersigned judicial officer, committed the offenses with which he is charged.

In witness statements provided to the Court, two witnesses state that prior to the actual killing, they heard Salazar say that he and his companions had come to kill Medina. (Statement of Rosendo Ontiveros [Formal Papers at 0199]; Statement of Flavio Agustin Campuzano Campuzano [Formal Papers at 0208] ). A third wit-

ness, Roberto Ontiveros Soto, stated that he ran into Salazar and Salazar's brother, who said that "they" were going to kill Medina. (Statement of Roberto Ontiveros Soto [Formal Papers at 0204–05] ). Furthermore, each of these witnesses reported seeing Salazar in a vehicle with guns within two weeks of the killing. (Statement of Rosendo Ontiveros [Formal Papers at 0199]; Statement of Roberto Ontiveros Soto [Formal Papers at 0204]; Statement of Flavio Agustin Campuzano Campuzano [Formal Papers at 0207–08] ). Two of the witnesses (Rosendo Ontiveros [formal papers at 0199] and Roberto Ontiveros Soto [formal papers at 0205] ) also stated that they saw Salazar in a dark blue Grand Marquis two days before the killing. A dark blue Grand Marquis was found in the area (Formal Papers at 0149, 0216) and identified by Rosendo Ontiveros and Roberto Ontiveros Soto as being the vehicle that Salazar was in, or associated with, two days before the killing (Statement of Rosendo Ontiveros [Formal Papers at 0218]; Statement of Roberto Ontiveros Soto [Formal Papers at 0204–05, 0219] ).[1]

■ Salazar challenges the statement made by Rosendo Ontiveros inculpating Salazar and argues that Rosendo Ontiveros later stated that he had no idea what he signed, that he was forced to sign the statement, and that he was told that he would be killed if he came to the United States to testify on Salazar's behalf. But a fugitive in international extradition proceedings is not permitted to introduce evidence that contradicts the evidence submitted by the requesting country. *See Hooker v. Klein,* 573 F.2d 1360, 1368 (9th Cir.1978) (fugitive "not permitted to introduce evidence on the issue of guilt or

innocence"); *Desmond v. Eggers,* 18 F.2d 503, 505 (9th Cir.1927) ("All of the authorities agree ... that matters which are only a defense to a trial on the merits are not admissible"); *Extradition of Mainero,* 990 F.Supp. at 1218 ("Evidence that conflicts with that submitted on behalf of the demanding party is not permitted, nor is impeachment of the credibility of the demanding country's witnesses."). Such a fugitive is entitled only to offer evidence that explains the proof. *Hooker,* 573 F.2d at 1368. Although Salazar argues that his attack on the means by which the Mexican evidence was obtained constitutes a permissible "explanation" rather than a prohibited contradiction in the evidence, this is not the case. Salazar, in fact, challenges the veracity and validity of Ontiveros's statements. Because Salazar's argument does not accept Mexico's evidence as true, it is contradictory rather than explanatory within the meaning of extradition law. *See United States v. Peterka,* 307 F.Supp.2d 1344, 1349 (M.D.Fla.2003) (at extradition hearing "the court shall exclude evidence that is proffered to ... challenge the credibility of witnesses"); *Extradition of Powell,* 4 F.Supp.2d 945, 958 (S.D.Cal.1998) (fugitive "foreclosed from presenting evidence as to the unreliability of witnesses because ... [that would] change an extradition hearing into more than it is meant to be, i.e., a minitrial" and "it is inappropriate to present evidence contradicting that proffered by the Republic of Mexico"); *Extradition of Singh,* 124 F.R.D. 571, 579 (D.N.J.1987) ("there is no issue better designed to convert this [extradition] proceeding into a dress rehearsal trial than a dispute between defendants and the Government as to whether [the witness] was coerced into making a confession"); *cf.*

---

1. Other witnesses to the events surrounding the shooting provided information concerning a black (or black-and-brown) Grand Marquis and a black vehicle (Statement of Gilberto Campa Silva [Formal Papers at 0082–83]; Statement of Leticia Rocha Sandoval [Formal Papers at 0085–0086]; Statement of Salvador Herrera Ayala [Formal Papers at·0078–79] ).

*Eain v. Wilkes,* 641 F.2d 504, 511 (7th Cir.1981) (recantation evidence contradicts requesting country's proofs).

It is well-established that an ex-tradition magistrate "does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn,* 783 F.2d at 815; *see also, e.g., Sakaguchi v. Kaulukukui,* 520 F.2d 726, 730–31 (9th Cir.1975) ("magistrate's function is to determine whether there is 'any' evidence sufficient to establish reasonable or probable cause"). Because the evidence submitted by the requesting entity has been properly authenticated, the Court must consider the facts therein. *Extradition of Marzook,* 924 F.Supp. 565, 592 (S.D.N.Y. 1996). *See also Extradition of Atta,* 706 F.Supp. at 1050–52. Moreover, the Court finds that the veracity of Ontiveros's statements cannot be determined without a trial. Similarly, the Court finds that the veracity of Beatriz Ontiveros's statement concerning the physical abuse inflicted upon members of her family and Salazar's family cannot be determined without a trial. Accordingly, this Court finds that competent evidence establishes probable cause that Salazar did, in fact, commit the offenses with which he has been charged. *Barapind,* 400 F.3d at 750 (9th Cir.2005).

(6) There are no other reasons that a certificate of extraditability should not be granted.

Although Salazar argues that his extradition is precluded by the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, the Court rejects this claim. The courts have long adhered to the general "Rule of Non–Inquiry" that it is the role of the Secretary of

State, not the court, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state. *Cornejo–Barreto v. Siefert,* 379 F.3d 1075, 1084 (9th Cir.2004), vacated as moot on other grounds, 389 F.3d 1307 (9th Cir.2004); *see also Barapind v. Reno,* 225 F.3d 1100, 1105–06 (9th Cir.2000).

Even if the Court were to consider Salazar's torture claim in these proceedings, Salazar has not provided sufficient evidence for this Court to find that he would be in danger of being subjected to torture upon extradition to Mexico. The declaration of Beatriz Ontiveros, upon which Salazar relies, is of questionable weight because the declaration is not signed by Ms. Ontiveros, cannot be considered sworn, and is not properly authenticated. Absent her declaration, Salazar's arguments are based on speculation. Accordingly, there is no basis to find that Salazar is in danger of being tortured in Mexico by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

THEREFORE, IT IS HEREBY ORDERED pursuant to 18 U.S.C. § 3184 that Jorge Salazar Solis is found extraditable and that this matter is certified to the United States Secretary of State so that a warrant may issue upon the requisition of the proper authorities of the government of Mexico for the surrender of Jorge Salazar Solis according to the stipulations of the Extradition Treaty for the Aggravated Homicide of Jose Manuel Diaz Medina and the Attempted Aggravated Homicide of Nestor de Jesus Vargas Perez and Norma Rocio Robledo Olvera.

IT IS FURTHER ORDERED that Jorge Salazar Solis is committed pursuant

to 18 U.S.C. § 3184 to the custody of the United States Marshal, or his authorized representative, there to remain until surrender shall be made.

IT IS FURTHER ORDERED that the Clerk's Office for this judicial district shall forward an original or certified copy of this Certification to the United States Secretary of State by way of the following person at the following address:

Gwen Harris

Law Enforcement and Intelligence

Office of the Legal Advisor

U.S. Dept. of State, Room 5419

2201   C Street, N.W.

Washington D.C. 20520